[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12578

_____

SHERYL GLOVER,
an individual,

                                        Plaintiff-Appellee,

*versus*

OCWEN LOAN SERVICING, LLC,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80053-DMM

_____

_____

No. 23-12579

_____

CATHY BOOZE,
an individual,

                                               Plaintiff-Appellee,

*versus*

OCWEN LOAN SERVICING, LLC,

                                               Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:20-cv-80135-DMM

_____

Before BRASHER, ED CARNES, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

This consolidated appeal requires us to decide whether Defendant-Appellant Ocwen Loan Servicing, LLC (Ocwen)[1] violated the Fair Debt Collection Practices Act (FDCPA) when it charged

---

[1] Ocwen has since been succeeded by PHH Mortgage Corporation by merger.

consumers optional fees for making expedited mortgage payments online or by phone. Plaintiff-Appellees Sheryl Glover and Cathy Booze argue Ocwen's "Speedpay fees" were an unconscionable means of collecting a debt under the FDCPA, which prohibits "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

District courts in the Eleventh Circuit and around the country are split over whether the FDCPA prohibits loan servicers from collecting "pay-to-pay" or "convenience" fees for the use of certain payment methods. In this case, the district court held that it does and awarded judgment to Glover and Booze. Most judges in the Middle and Southern Districts of Florida have reached the opposite conclusion—finding that convenience fees are neither part of nor incidental to the transferred debt, but separate fees paid voluntarily for a separate service. When viewed in isolation, this conclusion has some merit. But it overlooks the broader context in which debt collection activities occur. Ocwen's convenience fees may have been optional, but it charged those fees to consumers who had no option but to do business with it.

After careful review, and with the benefit of oral argument, we hold that Ocwen violated the FDCPA because it is a "debt collector" who charged an "amount" that was not "expressly authorized by the agreement creating the debt or permitted by law." *See*

15 U.S.C. § 1692f. We affirm the district court's judgment for Glover and Booze.

## I.        Factual & Procedural Background

The facts in these consolidated cases are nearly identical and undisputed. Ocwen acquired servicing rights to Booze and Glover's mortgages after they defaulted on their loans. Ocwen offered borrowers the option to make expedited payments over the phone or online, rather than by mail, for an additional convenience fee ranging from $7.50 to $12. Ocwen did not charge a fee for mailed payments. The payment processing company, Speedpay, Inc., kept $0.40 of each fee. Ocwen kept the remainder. Glover and Booze paid the fees a combined total of thirty-six times. Neither of their mortgages nor promissory notes mentioned fees for making payments online or by phone.

Booze and Glover filed nearly identical actions in Florida state court, alleging that Ocwen's Speedpay fees were unlawful debt collection practices under the FDCPA, 15 U.S.C. § 1692f(l).[2] Ocwen timely removed both actions to the Southern District of Florida. The parties agreed to consolidate their cases and submitted both for judgment on joint stipulated facts in lieu of a bench trial.

---

[2] Ocwen has faced several class action lawsuits challenging their use of Speedpay fees. *See, e.g.*, *McWhorter v. Ocwen Loan Servicing, LLC*, No. 15-CV-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019); *Bardak v. Ocwen Loan Servicing, LLC*, No. 19-cv-1111, 2020 WL 5104523 (M.D. Fla. Aug. 12, 2020); *Morris v. PHH Mortg. Corp.*, No. 20-60633, 2023 WL 5422523 (S.D. Fla. June 16, 2023). Both Glover and Booze qualified for, and timely opted out of, the *McWhorter* class.

The district court entered judgment for both plaintiffs, holding: (1) Ocwen was acting as a debt collector when it charged Speedpay fees; (2) Speedpay fees are "expenses incidental to the principal obligation," and are covered by the FDCPA; and (3) Speedpay fees are not permitted by law, nor expressly authorized by the debt agreements. The district court awarded Glover and Booze actual damages. Ocwen timely appealed both judgments, which were consolidated on appeal.

## II.    Standard of Review

We review a district court's interpretation of a statute de novo. *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1257 (11th Cir. 2017). When the parties stipulate to an agreed set of facts and submit the case to the district court for final resolution on questions of law, we review the district court's legal conclusion's de novo. *See Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1253–55 (11th Cir. 2016).

## III.    Analysis

"Disruptive dinnertime calls, downright deceit, and more besides drew Congress's eye to the debt collection industry. From that scrutiny emerged the Fair Debt Collection Practices Act, a statute that authorizes private lawsuits and weighty fines designed to deter wayward collection practices." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017). In passing the FDCPA, Congress

found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).

The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e). "Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S. Rep. No. 95-382, at 2 (1977).

The FDCPA pursues its objectives "by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019); *see* 15 U.S.C. §§ 1692c–1692f, 1692j–1692k.[3] Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." The provision of § 1692f that Glover and Booze claim Ocwen violated states:

---

[3] *See, e.g.*, 15 U.S.C. § 1692d (prohibiting debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"); *id.* § 1692e (prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt").

Without limiting the general application of the fore-going, the following conduct is a violation of this sec-tion:

(1) The collection of any amount (including any in-terest, fee, charge, or expense incidental to the princi-pal obligation) unless such amount is expressly au-thorized by the agreement creating the debt or per-mitted by law.

We interpret the FDCPA consistently with "our obligation to construe consumer protection statutes broadly in favor of con-sumers." *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016).

The FDCPA provides a private right of action to "any per-son" who is harmed by a "debt collector" who violates its provi-sions. *See* 15 U.S.C. § 1692k. The FDCPA's liability provision is "in no way limited to conduct and communications directed only to consumers." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1302 (11th Cir. 2015). The FDCPA "prohibits debt collectors from en-gaging in proscribed conduct with respect to any person in connec-tion with the collection of any debt, except where Congress has expressly limited applicability of the Act." *Id.* at 1304 (citations omitted). "By painting § 1692k with broad strokes, Congress en-sured that debt collectors could be held liable to consumers and non-consumers alike for violations of the Act's conduct-regulating provisions." *Id.* at 1302.

A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Debts do not require an extension of credit. *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 925 (11th Cir. 1997) (per curiam). Even if tort-like conduct triggered the obligation to pay, the obligation is a debt so long as it arose from a consumer contract—rather than by operation of law.[4]

The FDCPA regulates what debt collectors can do when collecting debts. *See* 15 U.S.C. §§ 1692–1692p. A "debt collector" is (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,"[5] *or* (2) any person "who regularly

---

[4] *See, e.g.*, *Brown v. Budget Rent–A–Car Sys., Inc.*, 119 F.3d 922, 923–25 (11th Cir. 1997) (per curiam) (treating contractual fees and damages to car rental company after a rental truck accident as a debt under the FDCPA); *accord Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836–37 (11th Cir. 2010) (per curiam) (same for obligation to return money from fraudulent PayPal transaction); *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950–51 (11th Cir. 2016) (same for contractual fines for unpaid HOA fees arising out of "consensual home-purchase transaction"). *But see Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (holding the obligation to pay damages for negligence after an accident was not a debt because "no contract, business, or consensual arrangement" existed between the tortfeasor and the injured party before the accident).

[5] For purposes of this definition, "any debts" means "all debts," including "debts acquired from another, in default, or owed to the collecting entity." *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015).

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Debt collectors under the FDCPA may be third-party collection agencies, entities whose principal purpose is debt collection, mortgage servicers that acquire accounts after default, and attorneys who primarily engage in debt collection activities, "even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

### A.  *"Debt Collector"*

As an initial matter, Ocwen is a "debt collector" subject to the restrictions of the FDCPA. Glover and Booze's obligations to pay arose out of the transaction to purchase their homes. 15 U.S.C. § 1692a(5). By purchasing servicing rights to Booze and Glover's defaulted mortgages and regularly collecting monthly mortgage payments owed to their lenders, Ocwen acted as a "debt collector." Ocwen admits it collected similar payments from many other borrowers. Because Ocwen acts as a "debt collector" when it services the underlying mortgage loans, the FDCPA restricts Ocwen's conduct when it collects or attempts to collect "debts."

Ocwen protests that it is not acting as a "debt collector" when it charges Speedpay fees—it is charging a separate fee for a separate service of accepting expedited payment. In Ocwen's view, for § 1692f(1) of the FDCPA to apply, the "amount" it collects must also be part of a debt owed or due to another.

"The short answer is that Congress did not write the statute that way." *Cf. United States v. Naftalin*, 441 U.S. 768, 773 (1979); *Shula*

*v. Lawent*, 359 F.3d 489, 491 (7th Cir. 2004) (recognizing that § 1692f(1) does not require proof that the unauthorized amounts were debts). Ocwen points to the provisions defining which "debt collectors" are subject to the FDCPA, rather than what activities count as "collection." In essence, Ocwen argues the phrase "collection of any amount" in § 1692f(1) should be limited by the FDCPA's definition of "debt collector." But had Congress intended to give both provisions the same effect, "it presumably would have done so expressly." *Russello v. United States*, 464 U.S. 16, 23 (1983).

Subsection 1692f(1) prohibits "the collection of any amount" unless it is authorized by law or the debt agreement. The FDCPA does not define the word "collect" or "collection." *See* 15 U.S.C. §§ 1692a, 1692f. Without a statutory definition of a term, "we look to the common usage of words for their meaning," and use "dictionary definitions for guidance." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) (quotation marks omitted). Black's Law Dictionary defines "collect" in multiple ways, including "to bring scattered things (assets, accounts, articles of property) into one mass or fund" and "to receive payment." *Collect, Black's Law Dictionary* (5th ed. 1979). The definition distinguishes that to "collect *a debt*" is "to obtain payment or liquidation of it either by personal solicitation or legal proceedings." *Id.* (emphasis added).

Even if a term has a "plain meaning in the context of a particular section" of a statute, it does not necessarily have the "same meaning in all other sections and in all other contexts." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 343 (1997) (noting the word "employee"

in Title VII has different meanings in different parts of the statute). Only "*identical* words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (emphasis added). We "must give effect to, not nullify, Congress' choice to include limiting language in some provisions but not others." *Gallardo ex rel. Vassallo v. Marstiller*, 596 U.S. 420, 431 (2022).

Ocwen's argument is also illogical when we "extend[] our gaze from the narrow statutory provision at issue to take in the larger statutory landscape." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010) ("We have affirmed many times that we do not look at one word or term in isolation but rather look to the entire statute and its context.").

Section 1692f prohibits "debt collectors" from using "unfair or unconscionable *means* to collect or attempt to collect any debt."[6] The term "means" typically "indicates that the given result (the 'end') is achieved, at least in part, *through* the specified action, instrument, or method (the 'means'), such that the connection between the two is something more than oblique, indirect, and incidental." *Cf. Loughrin v. United States*, 573 U.S. 351, 363 (2014). Here,

---

[6] "Means," at the time of the FDCPA's enactment, was defined as "that through which, or by the help of which, an end is attained," or "an available instrumentality for effecting a purpose." *Means*, *Black's Law Dictionary* (5th ed. 1979); *accord LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (per curiam) (defining "means" as "a method, a course of action, or an instrument by which an act can be accomplished or an end achieved").

the "means" are the actions, instruments, or methods, through which debt collection can be accomplished.

The FDCPA "limits what is acceptable in attempting debt collection." *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1240 (11th Cir. 2012) (per curiam). Its provisions restrict unfair debt collection *practices*, a term defined as a "succession of acts of a similar kind or in a like employment." *Practices*, *Black's Law Dictionary* (5th ed. 1979). The operative provisions of the FDCPA restrict *the acts* "debt collectors" employ to collect "debts"—prohibiting threats of violence, repetitive and annoying phone calls, or certain false, deceptive, or misleading representations when communicating about a debt. *See* 15 U.S.C. §§ 1692d, 1692e.

Every other subsection of § 1692f limits debt collectors' conduct when using various methods of collecting or attempting to collect a debt. Debt collectors who collect through the mail may not use certain language or symbols on envelopes, nor send post cards to communicate about a debt. 15 U.S.C. § 1692f(7)-(8). Debt collectors making phone calls cannot cause consumers to incur charges by concealing the true purpose of their communication. *Id.* § 1692f(5). When communicating with consumers, debt collectors cannot make unsubstantiated threats to dispossess consumers of their property. *Id.* § 1692f(6).

Read in this context, § 1692f(1) most logically prohibits the "conduct" of collecting "any amount" not authorized by the debt-creating agreement or permitted by law, while a debt collector is collecting a debt. Under the FDCPA, Glover and Booze need not

show Ocwen was acting as a debt collector when it collected the Speedpay fee, only that it charged the amount while collecting or attempting to collect a debt. Here, they have done so because Ocwen charged the fee as a condition of accepting an online payment on the debt that Ocwen was collecting.

### B.  *"Any Amount"*

As a debt collector, the FDCPA prohibits Ocwen from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Among other "conduct," Ocwen may not collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id*. § 1692f(1).

Within the Eleventh Circuit there are both inter- and intra-district splits as to whether such fees are "amounts" under this section. The issue has been heavily litigated in the Middle and Southern Districts of Florida, and judges have noted the lack of guidance from the Eleventh Circuit.[7] Most district courts around the country (including the district court here) have found that § 1692f(1) is

---

[7] *See, e.g.*, *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1249 (M.D. Fla. 2020) (noting "district courts conflict on these matters" and "the Eleventh Circuit has not addressed these issues"); *Est. of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020) ("Certainly, this issue may need to be resolved by a higher court.").

limited to amounts "incidental" to debts.[8] But nothing in the plain text of the statute requires this limitation. We hold that a debt collector violates the FDCPA when they charge "any amount" which is not expressly authorized by the agreement or permitted by law while collecting or attempting to collect a debt.

As the only Court of Appeals to directly address whether "optional" convenience fees violate § 1692f(1), the Fourth Circuit concluded that "'any amount' means what it says—*any* amount, whether or not that amount is incidental to the principal obligation." *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376 (4th Cir. 2022); *cf. Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) ("The only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law.").

The Fourth Circuit's reading is consistent with the Consumer Financial Protection Bureau's 2022 advisory opinion,[9] which

---

[8] *See McFadden v. Nationstar Mortg. LLC*, No. 20-166, 2022 WL 1001253, at *5 (D.D.C. Apr. 4, 2022) (noting the "overwhelming amount of well-articulated case law" finding that pay-to-pay fees are "incidental" to the underlying debt); *see also, e.g., Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 438 (E.D.N.Y. 2014); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1023 (E.D. Mo. 2015); *Wittman v. CB1, Inc.*, No. 15-105, 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016).

[9] The CFPB has rulemaking authority under the FDCPA, 15 U.S.C. § 1692l(d). Although it "cannot bind a court," the interpretations of the relevant agency, made in pursuance of official duty, and based on specialized experience, "constitute a body of experience and informed judgment to which courts and

states that debt collectors violate 15 U.S.C. § 1692f(1) when they use a payment processor that collects a convenience fee from a consumer and remits to the debt collector any amount in connection with that fee. *See* Pay-to-Pay Fees, 87 Fed. Reg. 39733, 39734 & n.19 (July 5, 2022). When it had primary enforcement authority over the FDCPA, the Federal Trade Commission (FTC) took a nearly identical stance. *See* Federal Trade Comm'n Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107–08 (Dec. 13, 1988) (explaining for purposes of § 1692f "any amount" includes "not only the debt, but also any incidental charges, such as collection charges, interest, service charges, late fees, and bad check handling charges").

Though the court cannot "rewrite" statutes and does not "defer to an agency's interpretation of a statute when the text is clear," *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc), we also cannot allow Ocwen to rewrite the FDCPA to serve their own interests. We find the Fourth Circuit, FTC, and CFPB's reading is consistent with the plain meaning of the FDCPA.

Section 1691f(1) prohibits debt collectors from collecting "*any* amount, (including *any* interest, fee, charge, or expense

---

litigants may properly resort for guidance." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262, 2267 (2024) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The weight of the agency's judgment depends on the thoroughness in its consideration, the validity of its reasoning, and its consistency with its other pronouncements. *Id.* at 2267.

incidental to the principal obligation)." (emphasis added). Congress' use of "any" suggests an intent to use that term "expansively." *Smith v. Berryhill*, 587 U.S. 471, 479 (2019). The Supreme Court has noted that "read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quotation marks omitted and alteration adopted). In the Eleventh Circuit, the word "any" similarly "has a well-established meaning." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001) (quotation marks omitted) (collecting cases). Without limiting language, "any" means "every" or "all." *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1316 n.8 (11th Cir. 2015).

"Even though the word 'any' demands a broad interpretation, we must look beyond that word itself to determine its ultimate scope." *Villarreal*, 839 F.3d at 965 (quotation marks omitted and alteration adopted). Here, the phrase that follows "any amount" reads "(including any interest, fee, charge, or expense incidental to the principal obligation)." 15 U.S.C. § 1692f(1).

"To 'include' is to 'contain' or 'comprise as part of a whole.'" *Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001). In statutes, the verb "to include" typically introduces examples, not an exhaustive list. *See Hincapie-Zapata v. U.S. Att'y Gen.*, 977 F.3d 1197, 1201–02 (11th Cir. 2020) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 15 (2012)); *accord United States v. Dominguez*, 997 F.3d 1121, 1125 (11th Cir. 2021) (citing *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941)).

The use of parentheses along with the word "including" emphasizes the fact that words inside the parentheses are "meant simply to be illustrative, hence redundant" especially absent a "suggestion that Congress intended the illustrative list to be complete." *See Chickasaw Nation*, 534 U.S. at 89. In statutes, a parenthetical is typically used to convey an "aside" or "afterthought," not a mandatory condition. *See Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 206 (2022); *accord Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424, 440 (2022).[10]

When reading § 1692f(1), the language outside the parentheses says without qualification that the subsection prohibits the collection of "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Cf. Chickasaw Nation*, 534 U.S. at 89. This prohibition extends to "every" amount or "all" amounts. *See Davidson*, 797 F.3d at 1316 n.8; *cf. Ali*, 558 U.S. at 221 (noting "Congress could not have chosen a more all-encompassing phrase than 'any other law enforcement officer'").

Ocwen's argument, that interpreting the statute to mean "any amount" would render the "including" parenthetical

---

[10] At times, the examples after the word "including" may be "broader than the general category, and must be viewed as limited in light of that category." *Massachusetts v. E.P.A.*, 549 U.S. 497, 557 (2007) (Scalia, J., dissenting). For example, the phrase "'any American automobile, including any truck or minivan,' would not naturally be construed to encompass a foreign-manufactured truck or minivan." *Id.* (quotation marks omitted and alterations adopted). But this is not the case with the broad phrase "any amount."

superfluous, contradicts the way Congress has used these phrases throughout the U.S. Code.[11] The parenthetical list that follows the phrase "any amount"—"(including any interest, fee, charge, or expense incidental to the principal obligation)"—serves as a list of examples clarifying the broad term that comes before them. *See Hincapie-Zapata*, 977 F.3d at 1201–02. They do not limit the types of "amounts" but illustrate the types of "amounts" a debt collector might charge in connection with a debt.

To borrow the Fourth Circuit's example, no one would think a statute that prohibits gambling on "any sporting event (including any game, race, or match broadcast on television)" allows people to bet with impunity on sporting events that are not televised. *Alexander, LLC*, 23 F.4th at 377. The parenthetical list gives helpful examples illustrating what "any sporting event" means, but it does not narrow the broader prohibition. *Id.*

As in that example, it would make little sense to read § 1692f(1) to narrowly focus on one specific category (amounts incidental to the principal obligation) at the expense of the broad language of the overarching prohibition ("*any* amount . . . including *any* interest, fee, charge or expense . . ."). Instead, by its plain text, § 1692f(1) prohibits debt collectors from collecting all amounts of

---

[11] *See, e.g.*, *Chickasaw Nation*, 534 U.S. at 90, 94–95 ("A parenthetical is, after all, a parenthetical, and it cannot be used to overcome the operative terms of the statute." (quoting *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 990 (4th Cir. 1996)). *See generally* Zachary A. Damir, Note, *Disfavoring Statutory Parentheses (Except in Certain Circumstances)*, 98 Notre Dame L. Rev. 349, 371–78 (2023) (collecting examples).

23-12578               Opinion of the Court                    19

any kind, *such as* all interests, fees, charges, and incidental expenses, while they are collecting or attempting to collect a debt. Because the FDCPA applies to "any amount," not just "incidental amounts," we need not reach the question of whether Speedpay fees are "incidental" to the debt. [12]

Most courts in the Middle and Southern District of Florida have reasoned that that § 1692f(1) does not prohibit convenience fees because they are "incurred in a separate agreement" for an optional service. *See, e.g.*, *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1249 (M.D. Fla. 2020); *Est. of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1264–65 (S.D. Fla. 2020); *Cooper v. Pennymac Loan Servs., LLC*, 509 F. Supp. 3d 1325, 1331 (S.D. Fla. 2020). But what matters is the relationship between debt collection and the method of collecting, not the nature of the additional amount imposed. Ocwen assessed the convenience fees while collecting a debt, and collection "was achieved, at least in part, through" this method. *Loughrin*, 573 U.S at 363. Because "any amount" really does mean "any," the convenience fees are covered by § 1692f(1);

---

[12] The FDCPA does not define "incidental." Interpreting another provision of the FDCPA, we have explained "the word 'incidental,' in common parlance, means 'occurring as something casual or of secondary importance.'" *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1300–01 (11th Cir. 2012) (quoting 1 Shorter Oxford English Dictionary 1343 (5th ed. 2002)).

20                    Opinion of the Court                    23-12578

there is no need to analyze whether that amount is "incidental to the principal obligation." [13]

Several of our sister circuits have found other types of service fees fall under § 1692f(1)'s purview. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 407–08 (3d Cir. 2000) (nonpayment penalties collected while collecting unpaid utility bills); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999); *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). In *Alexander*, the Fourth Circuit also rejected the argument that the convenience fee does not violate the FDCPA because it is optional, in other words, "not *dependent* upon the monthly payment of the mortgage, but upon the borrower's decision to make their mortgage payment online." 23 F.4th at 377 n.2 (finding this line of reasoning "unpersuasive"). Even when fees are fully disclosed and consented to, "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute." *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1023 (E.D. Mo. 2015).

### C. *"Permitted by Law"*

Under the FDCPA, a debt collector may not impose a service charge unless (i) the agreement creating the debt expressly authorizes the charge, or (ii) the charge is permitted by law. *See* 15 U.S.C. § 1692f(1). Ocwen does not argue that Booze and Glover's debt agreements expressly authorize its Speedpay fees. Neither

---

[13] Though, like the Fourth Circuit, "we have a hard time seeing how the convenience fee is not incidental to the debt." *Alexander*, 23 F.4th at 377 n.2.

23-12578               Opinion of the Court                    21

borrowers' mortgage nor promissory note offers the option for payments to be made online or over the phone, and neither document addresses potential fees for different payment channels. As the debt agreements are silent, the remaining question is whether Speedpay fees are "permitted by law." To evaluate whether a fee was "permitted by law," it is first necessary to determine which "law" the fees are "permitted by."

The FDCPA "does not ask whether [the debt collector's] actions were permitted by law" but "whether the amount he sought to collect was permitted by law." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (emphasis omitted and alteration adopted). Every circuit court decision that has applied the "permitted by law" standard has asked whether state substantive law permitted the "debt collector" to collect the specific amount that it demanded. *Id.*; *Duffy v. Landberg*, 215 F.3d 871, 873–75 (8th Cir. 2000); *Pollice*, 225 F.3d at 407; *Tuttle*, 190 F.3d at 13–15; *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008).[14] Here, Ocwen's proposed statutes do

---

[14] As early as 1988, the FTC's position was that where a contract does not expressly authorize collection of an amount, a debt collector can only collect that amount if expressly permitted by state law; not if state law is silent. Federal Trade Comm'n Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988). After enforcement authority shifted to the CFPB, it issued guidance consistent with this position. *See* 82 Fed. Reg. 35936, 35938 (Aug. 2, 2017). In 2022, the CFPB affirmed its 2017 position that amounts neither expressly authorized by the agreement creating the debt nor expressly authorized by law are impermissible, even if the amounts are the subject of a separate, valid agreement under state contract law. *See* 87 Fed. Reg. 39733, 39734 (July 5, 2022). We find that the agencies' longstanding and

not provide substantive permission to collect the specific "amounts" or fees at issue.

Ocwen first points to the Truth in Lending Act (TILA) and the Electronic Funds Transfer Act (EFTA), which are both part of the Consumer Credit Protection Act (CCPA), 15 U.S.C. §§ 1601–1693r. It argues these statutes implicitly permit convenience fees by providing rules for disclosing them. But neither statute substantively regulates the terms creditors can offer.

First, Congress enacted the TILA to promote "informed use of credit" by requiring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a). To achieve this purpose, the TILA "requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Szumny v. Am. Gen. Fin.*, 246 F.3d 1065, 1070 (7th Cir. 2001); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1120 (9th Cir. 2009). A "creditor's substantive rights are still governed by state law; federal law merely classifies those rights for disclosure purposes." *Szumny*, 246 F.3d at 1070 (quotation marks omitted).

Similarly, Congress enacted EFTA to outline the "rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). EFTA requires that financial institutions disclose the "terms and conditions of

---

consistent interpretation has persuasive value. *See Loper Bright Enters.*, 144 S. Ct. at 2262, 2267.

23-12578                 Opinion of the Court                 23

electronic fund transfers involving a consumer's account," including "any charges for electronic fund transfers." *Id.* § 1693c(a). Like TILA, EFTA establishes a private right of action for consumers against financial institutions that fail to make proper disclosures. *Id.* § 1693m.

TILA and EFTA require disclosure of terms and conditions, but those terms must be substantively authorized by other laws and regulations. If the overarching goal of both statutes is to ensure consumers are informed about potential costs and risks of credit agreements, it would be counterintuitive to interpret the FDCPA to allow debt collectors to charge fees to consumers without warning in their debt agreements or by law. This is especially true for consumers without a meaningful choice of service provider. EFTA's disclosure requirements and TILA's prohibition of pay-to-pay fees for certain types of credit do not implicitly permit debt collectors to collect the specific "amounts" or fees at issue.

As the Fourth Circuit noted in *Alexander*, "to allow and permit have an important connotative difference," with allow suggesting "merely the absence of opposition" while "permit suggests affirmative sanction or approval." *Alexander*, 23 F.4th at 377. In the FDCPA, Congress chose the phrase "permitted by law," which suggests that some affirmative sanction, rather than mere lack of prohibition, is required. *Id.*

Next, Ocwen argues that Speedpay fees are permitted by state contract law because borrowers enter into a separate agreement to pay the fee when they make the payment. But this argument

merely invites the question of whether that contract is permitted by law. We find that it is not, because Ocwen imposes a fee incidental to the underlying debt in violation of § 1692f(1).

The CFPB has affirmed that amounts neither expressly authorized by the agreement creating the debt nor expressly authorized by law are impermissible, even if the amounts are the subject of a separate, valid agreement under state contract law. *See* 87 Fed. Reg. 39733, 39734 (July 5, 2022); 82 Fed. Reg. 35936, 35938 (Aug. 2, 2017). The "point of [§ 1692f(1)] is to prohibit certain kinds of contracts, just as minimum wage laws, child labor laws, and antitrust laws prohibit other kinds of contracts." *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020).

It is unlikely that, where the agreement creating the debt did not authorize an amount, Congress intended for debt collectors to collect it by forming new contracts so long as state law simply did not prohibit it. Congress expressly noted that existing laws for preventing abusive debt collection practices were "inadequate to protect consumers." 15 U.S.C. § 1692(b). If any valid, new contract were enough, debt collectors would be free to offer unfair terms to consumers who cannot seek a better deal elsewhere. Because of this power imbalance, the FDCPA restricts the terms debt collectors can offer when collecting a debt, just as other laws prohibit other kinds of contracts.

Our sister circuits have considered additional fees charged by debt collectors "permitted by law" most often where the applicable state's Uniform Consumer Code (UCC) authorized incidental

damages. *See, e.g.*, *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 770 (8th Cir. 2001). This includes commercially reasonable fees, which can be collected by a person "in the position of a seller." *Id.* These courts required debt collectors to present evidence the fees could be characterized as commercially reasonable incidental or consequential damages resulting from the breach of the original debt agreement. *See, e.g.*, *Seeger*, 548 F.3d at 1112. For example, in *Tuttle*, the Second Circuit found that Equifax was entitled to collect a $20 fee for a bounced check because Connecticut's version of the UCC permitted collection of incidental damages, and Equifax's service charges were incidental "to the extent that it offsets the collection expenses arising from the dishonored check." 190 F.3d at 15.

While the Eleventh Circuit has not directly addressed implied permission by law, it took a similar approach when addressing whether a debt agreement explicitly authorized collection fees. In *Bradley v. Franklin Collection Services, Inc.*, we found a debt collector violated the FDCPA when it collected a debt that included a 33– and–1/3% "collection fee" where the patient agreement creating the debt only allowed a charge for "costs of collection." 739 F.3d 606, 610 (11th Cir. 2014) (per curiam).

We were "careful" not to rule out the parties' ability to contract for a collection fee based on a certain percentage, it just needed to do so with more specificity in the original debt agreement. *Id.* Similarly, *Seeger* noted the agreement creating the debt did not provide its customers fair warning they may have to bear the costs of collection, but "the simple addition of the words

'including collection fees' to the contract" might have authorized the debt collector to assess additional fees. 548 F.3d at 1113.

Ocwen does not attempt to argue its Speedpay fees might be permitted by contract law as incidental damages covering their costs of collection. This is likely because internet and online payment options are on average more cost-effective and less time-consuming. Accepting payment by mail generally costs debt collectors between $1 and $4, while processing payments made online or by phone typically costs debt collectors about $0.50 per transaction. And because it is in Ocwen's interest to get consumers to pay, it is also in its interest to offer convenient payment methods. *See Alexander*, 23 F.4th at 379.

Nothing in the FDCPA prevents Ocwen from extending this payment option to consumers if the agreement creating the debt provides customers fair warning of costs they may have to bear. Courts have interpreted debt agreements to authorize fees through simple, broad language, such as the addition of the words "including collection fees," or a provision specifying a collection fee might be percentage based. The banking industries who create these uniform agreements are better positioned to rectify this issue than the consumers the FDCPA seeks to protect. But in the absence of express authorization in the agreement creating the debt, we find that Speedpay fees are not implicitly authorized by TILA, EFTA, or Florida contract law.

### IV.    Conclusion

We hold that Ocwen violated the FDCPA because it is a "debt collector" that charged an "amount" not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The district court's judgment for Glover and Booze is **AFFIRMED.**