**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-2359**

ASHLY ALEXANDER; CEDRIC BISHOP, On behalf of themselves individually
and similarly situated persons,

       Plaintiffs – Appellants,

v.

CARRINGTON MORTGAGE SERVICES, LLC,

       Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Richard D. Bennett, Senior District Judge.  (1:20-cv-02369-RDB)

Argued:  December 8, 2021               Decided:  January 19, 2022

Before WILKINSON, KING, and DIAZ, Circuit Judges.

Affirmed in part, reversed in part, vacated in part, and remanded by published opinion.
Judge Wilkinson wrote the opinion, in which Judge King and Judge Diaz joined.

**ARGUED:**  Hassan A. Zavareei, TYCKO & ZAVAREEI LLP, Washington, D.C., for
Appellants.  Fredrick S. Levin, BUCKLEY LLP, Santa Monica, California, for Appellee.
**ON BRIEF:**  Phillip R. Robinson, CONSUMER LAW CENTER, LLC, Silver Spring,
Maryland; Dia Rasinariu, TYCKO & ZAVAREEI LLP, Washington, D.C.; Patricia M.
Kipnis, BAILEY GLASSER LLP, Cherry Hill, New Jersey, for Appellants.  Sarah B.
Meehan, BUCKLEY LLP, Washington, D.C., for Appellee.

WILKINSON, Circuit Judge:

Plaintiffs Ashly Alexander and Cedric Bishop brought this case as a class action against Carrington Mortgage Services, LLC. They alleged that Carrington violated the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act by charging $5 convenience fees to borrowers who paid monthly mortgage bills online or by phone. Because Carrington, a collector, charged an amount that was not permitted by law, plaintiffs can proceed with some (but not all) of their claims. For the following reasons, we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.

A.

The Maryland Consumer Debt Collection Act (MCDCA) and the Maryland Consumer Protection Act (MCPA) are remedial consumer protection statutes aimed at "protect[ing] the public from unfair or deceptive trade practices by creditors engaged in debt collection activities." *Andrews & Lawrence Pro. Servs. v. Mills*, 223 A.3d 947, 950 (Md. 2020). The MCDCA prohibits debt collectors from engaging in an extensive list of practices, while the MCPA both functions as a "statutory enforcement umbrella" and contains its own prohibitions. *Id.*

Two provisions of the MCDCA are relevant in this case. First, "[i]n collecting or attempting to collect an alleged debt," a "collector" may not "engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act." Md. Code Ann., Com. Law § 14-202(11). Maryland thus incorporates the substantive provisions of

2

the Fair Debt Collection Practices Act (FDCPA). One of those provisions, at issue here, is the FDCPA's proscription on "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." FDCPA § 808, 15 U.S.C § 1692f(1). Section 14-202(11) contains no scienter requirement. Second, a "collector" may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). The MCDCA defines "collector" to mean "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction," and a "consumer transaction" is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *Id.* § 14-201(b), (c).

The MCPA provides that "[a] person may not engage in any unfair, abusive, or deceptive trade practice . . . in the sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services" or "in the collection of consumer debts." *Id.* § 13-303(1), (5). "Unfair, abusive, or deceptive trade practices" are defined to include "any false, falsely disparaging, or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," as well as "any failure to state a material fact if the failure deceives or tends to deceive." *Id.* § 13-301(1), (3). An MCDCA violation "is also a per se violation" of the MCPA. *Mills*, 223 A.3d at 950; *see also* Md. Code Ann., Com. Law § 13-301(14)(iii) ("Unfair, abusive, or deceptive trade practices include any violation of a provision of . . . the [MCDCA].").

3

If a collector violates the MCDCA, it is "liable for any damages proximately caused by the violation." Md. Code Ann., Com. Law § 14-203. And under the MCPA, any person who is awarded damages "may also seek, and the court may award, reasonable attorney's fees." *Id.* § 13-408(b).

B.

In 2005, Ashly Alexander took out a residential mortgage loan to purchase her property in Baltimore, Maryland. The Note evidencing her loan required her to "make all payments under this Note in the form of cash, check or money order" at a P.O. Box in Dallas, Texas "or at a different place if required by the Note Holder." J.A. 116. In 2017, Carrington was retained to service and collect on Alexander's loan.

In 2010, Cedric Bishop took out a residential mortgage loan to refinance his property in Gaithersburg, Maryland. Bishop's Note stated that "[p]ayment shall be made" at an address in Irvine, California "or at such other place as Lender may designate in writing by notice to Borrower." J.A. 137. In 2018, Carrington was retained to service and collect on Bishop's loan.

Carrington gave Alexander and Bishop, in addition to the free pay-by-mail option specified in the initial mortgage documents, the choice to make payments online or by phone if they paid a $5 convenience fee. Borrowers opting to pay their bills online pressed an "I agree" button after reviewing Carrington's terms and conditions (thereby entering into a clickwrap agreement) and then selected "Continue" after manually inputting their payment amount and seeing the convenience fee displayed. Both Alexander and Bishop

4

paid their mortgages online, and they each incurred the $5 fee at least nine times in 2018 or 2019.

Alexander filed a class-action complaint in Maryland court challenging Carrington's convenience fees; Carrington promptly removed the action to federal court under 28 U.S.C. § 1332(d). Alexander then filed an amended complaint which added Bishop as a plaintiff. Count I of that complaint, at issue here, alleged two violations of the MCDCA: engaging in conduct that violates the FDCPA, Md. Code Ann., Com. Law § 14-202(11), and attempting to enforce a right with knowledge that the right does not exist, *id.* § 14-202(8). It also alleged two violations of the MCPA: a standalone unfair-and-deceptive-trade-practices claim and a derivative claim based on the MCDCA violations.[1]

Carrington moved to dismiss plaintiffs' complaint, and the district court granted Carrington's motion. The district court first held that in charging the convenience fees, Carrington was not a "collector" for either MCDCA claim. As to the § 14-202(11) claim, the district court further held that Carrington was not a "debt collector" under the FDCPA, that plaintiffs' choice to use the online-payment option was "permitted by law," and that Carrington's convenience fees were not "incidental" to plaintiffs' mortgage debt. *See* 15 U.S.C. § 1692f(1). As to the § 14-202(8) claim, the district court held that Carrington had the "right" to collect the convenience fees, since none of the mortgage documents expressly prohibited the fees and plaintiffs voluntarily chose to make payments online.

---

[1] Counts II and III of plaintiffs' amended complaint alleged violations of Maryland's law prohibiting usury and violations of a separate FDCPA provision. The district court dismissed those Counts, and they are not at issue in this appeal.

5

Because the district court found that plaintiffs' MCDCA claims failed, it also dismissed their derivative MCPA claim. On the standalone MCPA claim, the district court found no unfair practice or misrepresentation upon which plaintiffs relied. As a result, it dismissed all of plaintiffs' claims with prejudice.

We review de novo the district court's dismissal of plaintiffs' claims. *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015).

II.

The MCDCA and the MCPA are, as noted, remedial consumer protection statutes. As such, they "must be liberally construed, in order to effectuate [their] broad remedial purpose." *Mills*, 223 A.3d at 968 (quoting *Lockett v. Blue Ocean Bristol, LLC*, 132 A. 3d 257, 272 (Md. 2016)); *see also Washington Home Remodelers, Inc. v. State*, 45 A.3d 208, 219 (Md. 2012) (The MCPA "constitutes remedial legislation that is intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers."). In fact, Maryland's high court has expressly warned against construing these statutes in a "narrow or grudging" manner so as to "exemplify and perpetuate the very evils to be remedied." *Mills*, 223 A.3d at 968 (quoting *Pak v. Hoang*, 835 A.2d 1185, 1191 (Md. 2003)). Relatedly, "exemptions from remedial legislation must be narrowly construed." *Id.* (quoting *Lockett*, 132 A.3d at 272). So we must not "read[] additional exemptions into a remedial statute"; we instead defer to the legislature's judgments. *Id.*

Keeping these principles in mind, we turn to plaintiffs' central claim under the MCDCA: that, by charging its convenience fees, Carrington engaged in conduct violating

6

the FDCPA. We hold that Carrington is a "collector" who charged an "amount" that was not "expressly authorized by the agreement creating the debt or permitted by law" in violation of the FDCPA. *See* 15 U.S.C. § 1692f(1). As a result, we reverse the district court's dismissal of plaintiffs' § 14-202(11) claim.

A.

We first find that Carrington is a "collector" under the MCDCA. The MCDCA broadly defines a "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code Ann., Com. Law § 14-201(b). Here there is no dispute that Carrington is a person, as the MCDCA defines "person" to include "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." *Id.* § 14-201(d). Nor is there any dispute that plaintiffs' debt arose out of a consumer transaction, which the statute defines as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." *Id.* § 14-201(c). And it is plain that, by collecting borrowers' monthly mortgage payments, Carrington is collecting a debt. Each piece of the statutory puzzle thus fits together: Carrington counts as a "collector" under the MCDCA.

To avoid this result, Carrington offers three arguments. Yet each would have us add safe-harbor exceptions which are nowhere to be found within the MCDCA. First, Carrington would have us distinguish between loan servicing and debt collection, exempting the former from the MCDCA's reach. Passively accepting monthly payments, Carrington says, is a world away from actively enforcing the payment obligations of

7

defaulting borrowers. Maybe so, but the statute draws no such distinction. Because "[r]eading additional exemptions into a remedial statute limits the possibility of remedies beyond what the Legislature intended," *Mills*, 223 A.3d at 968, we decline Carrington's invitation to do just that.

Next, Carrington argues that plaintiffs must challenge a "method of collection" and not simply the validity of the fees. Until recently, that argument may have held some water. But in *Chavis v. Blibaum & Assocs., P.A.*, 2021 WL 3828655, at *11 (Md. Aug. 27, 2021), the Court of Appeals of Maryland rejected it altogether. Interpreting § 14-202(8), Maryland's high court found that "nothing in the MCDCA generally, or in § 14-202 specifically," limited § 14-202(8)'s applicability to methods of debt collection. *Id.* The same reasoning applies to § 14-202(11), which likewise says nothing about methods. So while "it is not inaccurate to say that § 14-202 deals with methods of debt collection, it is more accurate to describe the statute as regulating the conduct of a person while engaged in debt collection." *Id.* To put it simply, Carrington is collecting a debt; the means it chooses does not make it any less of a collector. We therefore refuse to place Carrington's extra-statutory hurdle in plaintiffs' path.

Carrington has one final arrow in its quiver. It argues that even if it is a "collector" under the MCDCA, plaintiffs must also show that Carrington is a "debt collector" under the FDCPA to establish a § 14-202(11) violation. We disagree. While the FDCPA's definition of "debt collector" includes a requirement that the debt be in default, the MCDCA's definition has no similar limitation. *Compare* 15 U.S.C. § 1692a(6)(F)(iii) *with* Md. Code Ann., Com. Law § 14-201(b).

8

The MCDCA's broader definition controls here, as it is not displaced by the federal definition. Indeed, the Maryland legislature was intentional on this front: it incorporated only the FDCPA's "substantive provisions" (sections 804 through 812). *Chavis*, 2021 WL 3828655, at *14 n.14; *see* Md. Code Ann., Com. Law § 14-202(11). It did not incorporate section 803, which includes the FDCPA's narrower definition of "debt collector." *See* FDCPA § 803, 15 U.S.C. § 1692a(6). Nor did it incorporate, for example, the FDCPA's remedial structure as to affirmative defenses, the statute of limitations, or civil remedies. *See* FDCPA § 813, 15 U.S.C. § 1692k. The end result, as Maryland district courts have recognized, is that "the MCDCA applies more broadly than the FDCPA." *Aghazu v. Severn Savings Bank*, 2017 WL 1020828, at *8 n.21 (D. Md. Mar. 16, 2017); *see also Awah v. Cap. One Bank*, 2015 WL 302880, at *4 n.8 (D. Md. Jan. 22, 2015) ("The MCDCA contains a broader definition of 'collector' than the definition of 'debt collector' under the FDCPA."). And the FDCPA itself specifies that state laws affording greater protection to consumers are not inconsistent with its own safeguards. *See* 15 U.S.C. § 1692n.

This makes good sense. Just as federal law need not totally preempt state law, so also state law need not totally incorporate federal law. *See, e.g.*, Kevin M. Clermont, *Degrees of Deference: Applying vs. Adopting Another Sovereign's Law*, 103 Cornell L. Rev. 243, 270 (2018); Ronald J. Greene, *Hybrid State Law in the Federal Courts*, 83 Harv. L. Rev. 289, 290–91 (1969). Instead, state legislatures can incorporate federal law to the extent that they see fit; incorporation is no all-or-nothing enterprise. So while some states only incorporate federal definitions (as to, say, the tax code), Clermont, *supra*, at 308, other states are well within their rights to incorporate federal substance while retaining

9

definitions of their own. This is precisely what Maryland has done, and so Carrington need not be a debt collector under federal standards for plaintiffs' state claim to proceed.

B.

We next hold that Carrington's convenience fees qualify as an "amount" under the FDCPA. The FDCPA prohibits "[t]he collection of *any amount* (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). Carrington claims that the FDCPA only prohibits fees that are "incidental" to the mortgage debt. But this misreads the statute.

Examine the statutory language, which forbids the collection of "any" amount and gives a non-exhaustive list of examples "includ[ed]" within this ban. This linguistic construction ought to be read broadly. As the Supreme Court has indicated, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). And "including" is "not [a term] of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941); *see also United States v. Hawley*, 919 F.3d 252, 256 (4th Cir. 2019) (explaining that including "is an introductory term for an *incomplete* list of examples"); *Include*, *Black's Law Dictionary* (10th ed. 2014) ("The participle *including* typically indicates a partial list."). All told, "any amount" means what it says—*any* amount, whether or not that amount is incidental to the principal obligation.

10

To see why Carrington's approach is misguided, imagine a statute that prohibits gambling on "any sporting event (including any game, race, or match broadcast on television)." While such a statute gives helpful examples illustrating what "any sporting event" means, this is no exhaustive list. No one would think that the legislature intended for people to bet with impunity on college football games airing exclusively online—or on high-school sports not broadcast anywhere. Yet Carrington's approach would have us narrowly focus on one specified category (games broadcast on television) at the expense of the overarching prohibition (any sporting event).

The FDCPA's far-reaching language straightforwardly applies to the collection of "any amount." While convenience fees are not explicitly enumerated, Congress certainly did not want debt collectors to skirt statutory prohibitions through linguistic sophistry. So we have no trouble in concluding that convenience fees are an "amount" under the FDCPA.[2]

## C.

We now turn to the final component of plaintiffs' § 14-202(11) claim and hold that Carrington's convenience fees were not "permitted by law." Once more, the FDCPA prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized

---

[2] As a result, we need not reach Carrington's argument that its fees are not "incidental" here. But in any event, its argument is unpersuasive. Carrington argues that "the convenience fee is not *dependent* upon the monthly payment of the mortgage, but upon the borrower's decision to make their mortgage payment online and thereby enjoy the convenience of immediate payment and posting." Appellee's Br. at 36. But we have a hard time seeing how the convenience fee is not incidental to the debt. Without the mortgage payment, there is of course no convenience fee.

by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). While Carrington concedes that the agreements creating the debt do not expressly authorize the convenience fees, the parties vigorously dispute whether those fees are "permitted by law." Plaintiffs argue that "permitted by law" requires express sanction or approval; Carrington thinks that the phrase indicates only a lack of express prohibition. In our view, plaintiffs' interpretation aligns best with the statute: here, "permitted by law" requires affirmative sanction or approval, typically (though not always) from a statute.

By itself, "permit" is susceptible to differing interpretations. It can mean, for instance, either "to consent to formally" or "to allow or admit of." *Permit*, *Black's Law Dictionary* (10th ed. 2014). However, "*allow* and *permit* have an important connotative difference. *Allow* . . . suggests merely the absence of opposition, or refraining from a proscription. In contrast, *permit* suggests affirmative sanction or approval." Garner's Dictionary of Legal Usage 46 (3d ed. 2011). Here, the legislature chose the word "permit." And it did not use that word by itself, but as part of the phrase "permitted by law." These choices suggest that some form of affirmative sanction (that is, some "law"), rather than mere lack of prohibition, is required.

Other circuits have likewise read "permitted by law" to require an affirmative sanction. *See Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) ("If state law neither *affirmatively permits* nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract." (emphasis added)); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008) ("Neither a law *expressly permitting* a collection fee . . . nor an agreement between the [parties] exists here."

12

(emphasis added)). As early as 1988, so did the FTC, which had primary enforcement authority over the FDCPA at that time. *See* Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988) ("A debt collector may attempt to collect a fee or charge in addition to the debt if . . . the contract [creating the debt] is silent but the charge is otherwise *expressly permitted* by state law." (emphasis added)). After enforcement authority shifted to the CFPB in 2010, it subsequently issued guidance that also required express permission. *See* CFPB Compliance Bulletin 2017-01, 82 Fed. Reg. 35,936, 35,938 (Aug. 2, 2017) ("Supervision has found that one or more mortgage servicers . . . violated the [FDCPA] when they charged fees for taking mortgage payments over the phone to borrowers whose mortgage instruments did not expressly authorize collecting such fees and who reside in states where applicable law does not *expressly permit* collecting such fees." (emphasis added)). While none of this authority is controlling, it buttresses our conclusion as to the statutory meaning.

So too does the linguistic context. Start with the statute's focus, in the first prong, on the original agreement. This protects consumers from later add-ons in the way of various fees, preventing them from being blindsided down the road. When choosing a mortgage lender, for example, consumers have different options. While bargaining power is certainly not equal between lender and borrower at the outset, there is at least some element of notice as to the terms of the original agreement. Yet consumers have no say in choosing their debt collectors, and they may well be over a barrel at that later point in time. To allow debt collectors to subsequently modify the terms of the original agreement as they see fit, based solely on the mere absence of legal prohibition, would thus frustrate the FDCPA's goals.

13

Next look at how the provision works as a whole. Collecting "any amount" is prohibited "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The incorporated FDCPA provision sets a "no collection" default, subject to two narrow exceptions. And these two exceptions mirror one another. Each lays out a particular source of authority (either the agreement creating the debt or law), and each requires that the source of authority affirmatively speaks to the amount's collection (either through express authorization or through permission). Our interpretation preserves this parallelism.

Carrington's contrary reading gives the phrase "permitted by law" a very loose meaning. So long as the law does not expressly prohibit it from doing so, Carrington claims, it can charge whatever fees it wishes. Yet this reading both shifts the default and also places the statute's two exceptions at war with one another. We reject an interpretation that carries such worrisome consequences. After all, we must interpret a statute "as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into an harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks and citations omitted); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180–82 (2012) (The "harmonious-reading canon" counsels that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). Carrington's reading suggests that a narrow exception sits right next to a broad license and thereby fails on this score. While it rightly acknowledges that express authorization in the original agreement is a carefully guarded and narrow gate to pass through, it wrongly suggests that permission by

14

law is an unattended and broad entrance to the same venue. If a fan can get into the North London Derby either by presenting an expensive ticket at Gate A or by waltzing freely through Gate B, no one in their right mind would choose the first option. Why pay to watch Arsenal beat Tottenham when you can enjoy the spectacle for free?

In this particular case, Carrington's argument hits another snag. Carrington places great emphasis on plaintiffs' manifestation of assent in the online clickwrap agreements, arguing that common principles of contract render its convenience fees "permitted by law." But if general contract principles are enough to permit the charging of such fees, then the statute's prong permitting amounts "expressly authorized by the agreement creating the debt" becomes superfluous. There would be no need to say this if Carrington is right, for an "agreement creating the debt" is by definition a valid contract. Because we "disfavor interpretations of statutes that render language superfluous," *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992), Carrington's argument runs into yet another barrier.

As one last throw of the dice, Carrington complains that we are punishing it for offering additional choices to consumers. It tries to make hay out of the fact that those consumers who pay online or over the phone receive the satisfaction of immediate payment and posting, and it contends that these options need not be provided for free. But here's the inconvenient truth: Carrington's alternative payment options are likely more cost-effective and less time-consuming for Carrington. While paying by check is free for consumers, it generally costs debt collectors between $1 and $4 to process those checks. Association for Financial Professionals, *Payments Cost Benchmarking Survey*, at 7 (2015). By contrast, processing payments made online or by phone typically costs debt collectors substantially

15

less, about $0.50 per transaction. *See id.* at 8 (finding median cost to be between $0.37 and $0.75); *see also* J.A. 7–8 (alleging that Carrington's fees range "from 10 to 50 times . . . its actual costs"). And because it is in Carrington's interest to get consumers to pay, it is also in Carrington's interest to offer convenient methods for doing so. Nothing we have said prevents Carrington from extending this payment option to consumers. If it does so, however, it must do so without the imposition of a statutorily prohibited convenience fee.

Because Carrington is a collector who charged an amount that was not expressly authorized by the agreement creating the debt or permitted by law, it violated the MCDCA. We thus reverse the district court's dismissal of plaintiffs' § 14-202(11) claim.

III.

A few words as to plaintiffs' remaining claims. First, because we hold that Carrington has violated the MCDCA by engaging in conduct violating the FDCPA, plaintiffs' derivative MCPA claim can also proceed, and the district court's dismissal of that claim must also be reversed.

Second, plaintiffs argue that because the fees are prohibited under § 14-202(11), Carrington asserts rights that "do[] not exist" under § 14-202(8). As explained above, Carrington is an MCDCA "collector" whose convenience fees are not "permitted by law." So the district court's dismissal, predicated as it was on its view of the MCDCA's definition of "collector" and plaintiffs' voluntary assent, was in error. We vacate this dismissal and remand plaintiffs' § 14-202(8) claim to allow the district court's further consideration of that claim consistent with this opinion.

16

Third and finally, plaintiffs' standalone MCPA claim alleging "unfair, abusive, or deceptive trade practices" cannot proceed. To plead a standalone claim under the MCPA, a consumer must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. General Motors Corp.*, 916 A.2d 257, 277 (Md. 2007)). While plaintiffs perfunctorily allege that they "reasonably relied upon the direct and indirect material acts and actions of Carrington," J.A. 35, this looks more like a "threadbare recital[] of the elements of a cause of action" than a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). We thus affirm the district court's dismissal of this claim.

IV.

We do not know if disallowing these fees is a wise policy choice. But it is the choice that Maryland has made, and our role is simply to respect it. For the foregoing reasons, we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*VACATED IN PART, AND REMANDED*

17