**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-2169**

─────────────

RUBEN PALAZZO,

       Plaintiff - Appellant,

     v.

BAYVIEW LOAN SERVICING, LLC, now known as Community Loan Servicing LLC; MANUFACTURERS AND TRADERS TRUST COMPANY, d/b/a M&T Bank,

       Defendants - Appellees.

─────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah L. Boardman, District Judge.  (8:20-cv-02392-DLB)

─────────────

Argued:  January 27, 2026                   Decided:  March 20, 2026

─────────────

Before KING, WYNN, and THACKER, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge King and Judge Wynn joined.

─────────────

**ARGUED:**  Phillip R. Robinson, CONSUMER LAW CENTER LLC, Silver Spring, Maryland, for Appellant.  Patricia B. Jefferson, Baltimore, Maryland, Bradford Scott Bernstein, MILES & STOCKBRIDGE P.C., North Bethesda, Maryland, for Appellees. **ON BRIEF:**  Ariana K. DeJan-Lenoir, MILES & STOCKBRIDGE, P.C., Rockville, Maryland, for Appellees.

─────────────

THACKER, Circuit Judge:

While in Chapter 13 bankruptcy proceedings, Ruben Palazzo ("Appellant") received various documents from his mortgage servicers concerning his mortgage obligation. Appellant sued the servicers, alleging that these communications amounted to debt collection activities, which were prohibited during his bankruptcy proceedings. He also claimed that the calculations included in those documents were inaccurate and therefore violated federal and state consumer protection laws.

After analyzing each document in detail, the district court concluded that none represented an effort to collect a debt. On that basis, the district court granted summary judgment to the servicers on Appellant's federal claims and declined to exercise supplemental jurisdiction over his state law claims. Discerning no error, we affirm.

I.

A.

In 2007, Appellant obtained a mortgage through SunTrust Mortgage, Inc. ("SunTrust"). Appellant later fell behind on the mortgage payments, which led to him entering into a repayment agreement with SunTrust in 2010. A few years after that, in December 2013, SunTrust transferred servicing of the loan to Bayview Loan Servicing LLC ("Bayview"), with Manufacturing and Traders Trust Company ("M&T") (collectively "Appellees") servicing the loan on Bayview's behalf.

Ultimately, Appellant filed Chapter 13 bankruptcy in February 2016, which resulted in an automatic stay of debt collections against him. Bayview filed a proof of claim, seeking $150,548.06, which was the remaining amount on the mortgage, and another

2

$25,971.98 for pre-petition arrearages.[1] Appellant objected to the amount claimed for pre-petition arrearages. The bankruptcy court sustained Appellant's objection and limited Bayview's recoverable pre-petition arrearages to $11,816.21. Appellant filed his operative Chapter 13 plan in April 2018, and the bankruptcy court approved the plan on July 6, 2018. Appellant made all of the payments called for by his plan by January 2021, and the case was closed on July 10, 2022.

While Appellant's bankruptcy was ongoing, Appellees regularly sent Appellant written communications -- some of which were requested by Appellant -- concerning his mortgage obligation. These included monthly account statements, payoff statements (sent at Appellant's request), and 1098 tax forms. Because Appellant's claims revolve around the precise contents of these communications, we discuss each in more detail below.

1.

Monthly Account Statements

During Appellant's bankruptcy, Appellees regularly sent him monthly account statements. Those statements listed the outstanding balance on Appellant's loan, the interest rate, amount of interest paid, and various fees owed. And, relevant here, the monthly statements listed the amounts that would be due once the bankruptcy concluded, the due dates for those post-bankruptcy payments, and attached payment coupons.

---

[1] Pre-petition arrearages are debts or other financial obligations accumulated prior to filing bankruptcy.

3

Each monthly statement also included the following "Bankruptcy Message," found on the top half of the first page of the statement:

> **Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.**
>
> If your bankruptcy plan required you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.
>
> If you want to stop receiving statements, write to us at [provided address].

J.A. 508 (emphasis in original).[2]

### 2.

### Payoff Statements

Appellees also sent two payoff statements to Appellant, both times at his request. M&T sent the first payoff statement on June 21, 2018, and Bayview sent the second payoff statement on February 5, 2019. Each payoff statement, as the name suggests, advised Appellant what it would cost him to pay off the loan in full. The payoff statements also included payment instructions and a form to be submitted with any payment.

Like the monthly statements, each payoff statement also included a bankruptcy disclaimer. The June 2018 payoff statement, a three page document, included the following disclaimer at the bottom of each page:

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

> This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> However, if you are currently in bankruptcy, or if you have been granted a bankruptcy discharge, this is not an attempt to collect a debt from you, nor is it an attempt to impose personal liability on you for your debt.

J.A. 514, 515. The February 2019 payoff statement, a two page document, had similar language, which appeared on the second page under a bold "Disclaimers and Notices" header:

> Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

*Id.* 529.

### 3.

### 1098 Tax Statements

Bayview also sent Appellant some 1098 tax documents in 2019 and 2020. Those documents listed the interest Appellant had paid, remaining principal on his loan, property taxes, and some additional fees. The tax forms made no demand for payment, nor did they include instructions on how to make a payment.

### B.

Appellant filed this lawsuit against Appellees as part of his ongoing bankruptcy proceedings in 2019. Appellant alleged that Appellees sent him the monthly statements, payoff statements, and tax forms in an effort to collect payment from him, which was

5

prohibited by the bankruptcy court's automatic stay of debt collection activities. Appellant

also alleged that the written correspondence included inaccurate figures and therefore

violated federal and state debt collection laws. Seeking redress for those perceived wrongs,

Appellant's operative complaint[3] alleges the following four claims:

- Count I -- contempt for violating the automatic stay pursuant to 11 U.S.C. § 1327;

- Count II -- violation of the automatic stay caused by bankruptcy pursuant to 11 U.S.C. § 362;

- Count III -- violations of Maryland's Consumer Debt Collection Act; and

- Count IV -- violations of the federal Fair Debt Collection Practice Act ("FDCPA").

The case was initially referred to the bankruptcy court as part of the ongoing

bankruptcy, but the district court revoked the case referral on February 4, 2022, and

managed the case itself.

The parties first filed cross motions for summary judgment on Counts I and II. The

district court granted Appellees' motion and denied Appellant's motion by written opinion

in March 2023. In doing so, the district court held that each document sent to Appellant

was purely informational in nature and not an attempt to collect a debt. For that reason,

the district court held that Appellant had failed to prove any conduct that violated the

---

[3] Appellant amended his complaint twice.

6

automatic stay of collection activity imposed during his bankruptcy, and it granted Appellees summary judgment on Counts I and II.[4]

The parties later filed cross motions for summary judgment on Counts III and IV. The district court granted Appellees' motion in part and denied Appellant's motion entirely by written opinion in September 2024. The district court applied the reasoning found in *Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308 (4th Cir. 2016) (unpublished) and again concluded that none of the written communications sent to Appellant were attempts to collect a debt. Because Appellant had failed to identify any debt collection activity, the district court granted summary judgment to Appellees on Count III.

The district court, however, stopped short of ruling on Count IV, Appellant's state law debt collection claim. As the court explained, all of Appellant's federal law claims had at that point been dismissed, and the court lacked the information necessary to exercise diversity jurisdiction over the lingering state law claim. The district court also advised Appellant that it would not exercise supplemental jurisdiction over Count IV. Therefore, Appellant needed to provide the court with sufficient information to trigger diversity jurisdiction if he wished to continue pursuing Count IV in federal court. Appellant declined to do so, notifying the district court that he would refile that claim in state court. As a result, the district court dismissed Count IV without prejudice and closed the case.

---

[4] Appellant appealed this ruling, but we dismissed the appeal for lack of a final order because the district court had not disposed of the entire complaint. *See Palazzo v. Bayview Loan Serv., LLC*, No. 23-1429, 2023 WL 7144636 (4th Cir. Sept. 5, 2023).

7

This appeal followed.

## II.

"We review de novo the district court's decision on the parties' cross-motions for summary judgment." *Kipke v. Moore*, 165 F.4th 194, 205 (4th Cir. 2026) (quoting *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024) (en banc)). "[S]ummary judgment may be granted 'only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting *Md. Shall Issue, Inc.*, 116 F.4th at 220).

## III.

On appeal, Appellant asks us to reverse the district court's dismissal of Counts II, III, and IV.[5] As he sees it, the district court erred in holding that none of the written communications Appellees sent him were attempts to collect a debt. He also argues that, because his federal claims should have survived summary judgment, the district court erred in dismissing his state law claims for lack of subject matter jurisdiction.

In addressing Appellant's arguments, we proceed in three steps. We first address the district court's dismissal of Count III, the FDCPA claim.[6] We then turn to Count II, the

---

[5] Appellant abandoned Count I in his opening brief. *See* Appellant's Opening Br. at 20 n.1 (conceding that he "does not preserve or pursue [the contempt claim] in this appeal and solely pursues his automatic stay claims and his debt collection claims").

[6] We begin with Count III because resolution of that claim pares down significantly the remaining issues to address in Counts II and IV.

stay violation claim.  Finally, we address the dismissal of Count IV, Appellant's state law debt collection claim.

A.

FDCPA Claim

Appellant's FDCPA claim is straightforward.  He alleges that Appellees sent him three forms of documents trying to collect payment from him while he was in Chapter 13 bankruptcy -- monthly statements, payoff statements, and 1098 tax forms.  Appellant claims these documents inaccurately reported debts owed and therefore constituted unfair debt collection activity pursuant to Section 1692f.[7]  The district court disagreed on the first premise and ruled as a matter of law that none of the correspondences were attempts to collect a debt.

1.

The FDCPA was enacted to outlaw "the use of abusive, deceptive, and unfair debt collection practices."  15 U.S.C. § 1692(a).  To that end, the FDCPA provides a private cause of action against any debt collectors that violate any of the statute's many prohibitions.  15 U.S.C. § 1692k.

We have previously identified, albeit in an unpublished decision, three elements that a plaintiff must demonstrate to prevail on an FDCPA claim: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt

---

[7] Appellant had other FDCPA claims below but, on appeal, he has abandoned all but his § 1692f claim.

9

collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (per curiam) (citation omitted). Our sister circuits have adopted similar tests. *See, e.g.*, *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) ("To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." (citation omitted)).

No matter the precise formulation, however, one thing is clear: the FDCPA "only applies to communications sent in connection with the collection of a debt." *Lovegrove v. Ocwen Home Loans Serv., L.L.C.*, 666 F. App'x 308, 311 (4th Cir. 2016) (unpublished); *see also Koontz v. SN Serv. Corp.*, 133 F.4th 320, 326–27 (4th Cir. 2025); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) ("To state an FDCPA claim, Plaintiffs must first allege that they have been the object of collection activity arising from 'debt.'" (citation omitted)).

"[T]he FDCPA does not define what it means to collect or attempt to collect a debt." *Koontz*, 133 F.4th at 327. Left to our own devices, we have adopted a "commonsense inquiry that evaluates the nature of the parties' relationship, the objective purpose and context of the communication, and whether the communication includes a demand for

10

payment."[8] *Id.* (quoting *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016)). "In a financial arrangement such as this," where the parties' relationship stems from a mortgage, we "presume [the plaintiff has] 'a basic level of understanding and willingness to read with care.'" *Lovegrove*, 666 F. App'x at 312 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

2.

We have twice applied this commonsense inquiry to written communications sent to debtors who had previously entered bankruptcy.

We first did so in *Lovegrove*, where the plaintiff took out a mortgage, defaulted on it, and entered Chapter 7 bankruptcy. 666 F. App'x at 309–10. He later obtained a discharge in bankruptcy, and a year and a half after that, a new mortgage servicer took over his loan. *Id.* at 310. The new servicer immediately sent him a letter containing an accounting of the discharged but unpaid debt. *Id.* That letter also contained the following disclaimer, in bold italicized font:

---

[8] Throughout his briefing, Appellant continually urges us to instead analyze this issue through the lens of "the least sophisticated consumer." *See, e.g.*, Reply Br. at 19–20. Although that is an applicable standard in the FDCPA analysis, it only applies in relation to the third element. Put differently, we apply the "commonsense inquiry" test to determine whether a given communication was made for the purpose of collecting payment. *In re Dubois*, 834 F.3d at 527. If we answer that question in the affirmative, we then apply the least sophisticated consumer standard when determining whether that debt collection communication was unfair or unconscionable. *See Russell v. Absolute Collections Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014) ("Whether a communication is false, misleading, or deceptive in violation of [the FDCPA] is determined from the vantage of the 'least sophisticated consumer.'" (citation omitted)). As a result, the least sophisticated consumer standard does not come into play unless and until Appellant establishes that he was on the receiving end of debt collection activity.

> ***This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.***

*Id.* (emphasis in original).  The servicer also sent, that same day, "another letter detailing 'Alternatives to Foreclosure' which contain[ed] an identical disclaimer but without the emboldened typeface."  *Id.*

From there, the servicer began sending the plaintiff monthly account statements, which listed "the principal balance, the next payment due date, a payment coupon, and the total amount due."  *Lovegrove*, 666 F. App'x at 310.  Those monthly statements also contained an "Important Messages" section, which contained the following disclaimer:

> If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.
>
> Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only.

*Id.*  The bankruptcy information on the back of the statements read:

> If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have any questions regarding this statement, or do not want [us] to send you monthly statements in the future, please contact us . . . .

*Id.* (alteration in original).  The servicer also sent the plaintiff a single escrow account disclosure statement, which contained the same disclaimer as the letters sent when the servicer first took over the mortgage, i.e., the first disclaimer above.  *Id.*

12

The plaintiff sued his mortgage servicer, alleging these written communications were attempts to collect a discharged debt and thus were in violation of the FDCPA. *Lovegrove*, 666 F. App'x at 311. The district court granted summary judgment against him, holding that none of the communications were attempts to collect a debt. *Id.*

We affirmed. In doing so, we first explained that the FDCPA "only applies to communications sent in connection with the collection of a debt." *Lovegrove*, 666 F. App'x at 311. We then applied the commonsense inquiry set out above, starting with the "presum[ption]" that the plaintiff had "a basic level of understanding and willingness to read with care." *Id.* at 312 (internal quotation marks omitted) (quoting *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136). We recognized that the monthly statements, standing on their own, could have been understood as requests for payment. *Id.* at 312 n.5. But we also recognized that each statement contained "straightforward disclaimers," which the plaintiff was "deemed to have . . . knowledge of." *Id.* at 312. And, because those disclaimers "clear[ly] and unequivocal[ly]" stated that the correspondences "were not in connection with the collection of a debt" for someone in the plaintiff's shoes, *id.* at 311, we held that he "should have known that [the servicer] was not attempting to collect a debt from him," *id.* at 312.

Then, just last year, we applied the commonsense inquiry for a second time in *Koontz v. SN Servicing Corporation*, 133 F.4th 320 (4th Cir. 2025). There, the plaintiff had taken out a mortgage but then filed for bankruptcy. *Koontz*, 133 F.4th at 324. He later emerged from bankruptcy with a discharge order in hand, which eliminated all personal

13

liability for his pre-discharge debts. *Id.* Then, half a decade after his bankruptcy was over,

the plaintiff's mortgage servicer sent him a letter, which began:

> *YOU ARE HEREBY NOTIFIED THAT SN SERVICING
> CORPORATION, ITS EMPLOYEES, AGENTS AND
> ATTORNEYS ARE ATTEMPTING TO COLLECT THIS
> DEBT[.] ANY INFORMATION THAT WE OBTAIN WILL BE
> USED FOR THAT PURPOSE.*
>
> *IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN
> BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED,
> THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE
> CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A
> DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A
> STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN
> AGAINST YOUR PROPERTY.*

*Id.* The letter went on to notify the plaintiff that his "loan account" had "been assessed and

charged" with a $23.67 late fee. *Id.* The letter continued:

> [i]f you . . . have received a discharge in bankruptcy, this notice
> is not intended as an attempt to collect a debt as a personal
> liability, but is solely an effort to retain whatever rights we hold
> in the property that secures the debt, as evidenced by the
> security instrument.

*Id.* at 324–25 (alterations in original).

The mortgage servicer sent the plaintiff a second letter a month later that said that a

payment the plaintiff had made was not being credited to his account. *Koontz*, 133 F.4th

at 325. The second letter contained a disclaimer identical to that in the first letter. *Id.* The

plaintiff sued the mortgage servicer alleging that the letters constituted attempts to collect

debts in violation of the FDCPA and a similar state law, but the district court dismissed the

complaint. *Id.* In its view, neither of the letters "constitute[d] attempts to collect a

consumer debt." *Id.*

14

We reversed. Again applying our commonsense inquiry, we first observed that the "letters [unmistakably] announced their purpose: [the mortgage servicer] was 'attempting to collect [a] debt.'" *Koontz*, 133 F.4th at 327. We further noted that the "first letter also included a demand for payment, telling [the plaintiff] certain fees have been assessed and charged to" his account. *Id.*

We recognized that each letter also contained disclaimers, but we held that they did not actually "disclaim the notion that [the mortgage servicer] was seeking to collect a debt." *Koontz*, 133 F.4th at 327. Instead, we said, the letters only disclaimed that the mortgage servicer was not trying to collect the debt from his *personal liability*. *Id.* But, we held that the disclaimers made clear that the mortgage servicer intended to collect the debt by "enforc[ing] . . . a mortgage lien against [the plaintiff's] property." *Id.* (emphasis omitted). Enforcement of a mortgage lien, we stated, oftentimes goes by a more common name: "foreclosure." *Id.* And, because "foreclosure is a means of collecting a debt under the FDCPA," we "conclude[d] [that the mortgage servicer's] letters were efforts to collect a debt under the [FDCPA]," despite the purported disclaimers. *Id.* (internal quotation marks omitted) (quoting *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 474–75 (2019)).

### 3.

We now turn the case at hand. The district court analyzed each type of communication at issue here -- the monthly statements, payoff statements, and tax forms -- and concluded that none were related to debt collection. We address them in order.

15

a.

Monthly Statements

We begin with the monthly statements and find *Lovegrove* instructive.  Here, just like in *Lovegrove*, Appellant received monthly mortgage statements that detailed the amounts he owed, listed prospective due dates for payment, and included coupons to make each payment.  And just like in *Lovegrove*, each monthly statement also included a prominent disclaimer that clearly and unequivocally told Appellant that, for someone in his shoes, no payment was sought and the communication was not an attempt to collect a debt.  J.A. 426 ("Our records show that you are a debtor in bankruptcy.  We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.").  Here, just like in *Lovegrove*, we must presume that Appellant read and understood these disclaimers.  *Lovegrove*, 666 F. App'x at 312 ("Lovegrove is deemed to have the knowledge of these straightforward disclaimers. Armed with that knowledge and the understanding that his debt had been discharged in bankruptcy, Lovegrove should have known that Ocwen was not attempting to collect a debt from him.").  We therefore agree with the district court that the monthly statements were not related to debt collection activity.

*Koontz* casts no doubt on this conclusion.  To be sure, we held in *Koontz* that the disclaimers, which bear some resemblance to the disclaimers here, were not enough to take the letters out of the realm of debt collection activity.  But there, unlike here, the disclaimers did not disavow an intent to collect a debt entirely.  To the contrary, the *Koontz* disclaimers actually told the debtor that his mortgage servicer had selected a particular method of

16

collecting payment -- foreclosure. The disclaimers in the case at hand did the opposite inasmuch as they explicitly advised Appellant that the documents in which they appeared were <u>not</u> part of an attempt to collect a debt, and also explicitly told Appellant <u>not</u> to make a payment to Appellees. Thus, *Koontz* is inapposite, as it rests on facts far afield from those here.

Appellant offers two responses to this analysis, but neither are persuasive. Appellant first asserts that we ought not follow *Lovegrove* because it is an unpublished, non-binding decision. But Appellant forgets that even unpublished decisions are "entitled . . . to the weight they generate by the persuasiveness of their reasoning," *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted), and we find *Lovegrove* persuasive. We are, after all, bound to "presum[e] a basic level of understanding," a "willingness to read with care," and "a quotient of reasonableness" on Appellant's part. *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136. Given the plain, easy to understand disclaimer language found in each monthly statement, we see no rational reason why Appellant would have thought he was expected to make a payment.

Appellant's alternative argument takes a slightly different tack. Rather than following the reasoning in our *Lovegrove* decision, he urges that we follow *Alexander v. Carrington Mortgage Services, LLC*, 23 F.4th 370 (4th Cir. 2022), and *Guthrie v. PHH Mortgage Corporation*, 79 F.4th 328 (4th Cir. 2023). But neither *Alexander* nor *Guthrie* are relevant here.

First, in *Alexender*, a mortgage servicer charged a $5.00 "convenience fee" anytime a customer made a payment online or over the phone. *Alexander*, 23 F.4th at 373. A

17

customer sued the servicer claiming that the pay-to-pay fees violated the FDCPA.[9]  The

district court dismissed the suit, reasoning that the fees did not violate the FDCPA because

the defendant was not a debt collector and, even if it were, the fees were "permitted by

law."  *Id.* at 374.  We reversed and held that the defendant was a debt collector, and the

fees were not permitted by law.  *Id.* at 374–75.  But, relevant here, we did not discuss

whether the fees were debt collection efforts because the defendant in *Alexander* never

raised that issue.  As a result, *Alexender* says nothing about when a written communication

sent to a debtor qualifies as debt collection activity, and we can glean no principle from it

to guide our analysis here.

 *Guthrie* is no more illuminating.  In *Guthrie*, the plaintiff and his then wife took out

a mortgage to buy their home.  *Guthrie*, 79 F.4th at 334.  The couple later split, but each

remained on the loan.  *Id.*  Sometime after that, the plaintiff (but not his ex) filed Chapter

13 bankruptcy and received a discharge, which extinguished the plaintiff's debt on the

house.  *Id.*  But the plaintiff's mortgage servicer kept contacting him and requesting

payment.  *Id.* at 335.  Sometimes they would call the plaintiff and demand payment, other

times they would ask for his ex-wife.  *Id.*  The servicer also sent the plaintiff written

documents, which "disclaimed any attempt to collect on a debt discharged in bankruptcy."

*Id.* at 343–43.

---

[9] Technically, the plaintiff filed suit under Maryland state consumer protection law. *Alexander*, 23 F.4th at 374.  But that Maryland state law incorporated the FDCPA and made an FDCPA violation a violation of Maryland law.  *Id.* at 372–73.  So, for the sake of simplicity, we refer to the FDCPA here.

The plaintiff filed suit under North Carolina law and alleged that the mortgage servicer had engaged in illegal debt collection activity. *Guthrie*, 79 F.4th at 336. The district court followed our reasoning in *Lovegrove* and granted summary judgment to the servicer. *Id.* Specifically, the court "reasoned that including . . . disclaimer language in correspondence [sent to a debtor] means that the correspondence is not considered an attempt to collect a debt." *Id.* at 343. The district court also reasoned that North Carolina law did not prevent the servicer from calling the plaintiff and asking about his ex-wife, who had not filed bankruptcy and thus remained liable for the debt. *Id.*

We "agree[d] that the facts on which the district court relied support[ed] [the servicer's] defenses," but we nevertheless reversed and sent the case back for a trial. *Guthrie*, 79 F.4th at 343. However, in doing so, we honed in on the phone calls and never mentioned the written correspondences. We said:

> Take PHH's phone calls to Guthrie. Guthrie states that each time PHH called, it sought to collect the full amount of the loan from him, even if the caller also mentioned [his ex-wife]. And while the record contains but a few transcripts of those calls, none contain disclaimer language. Likewise, those same transcripts reveal that even when the caller stated he was attempting to reach Mark and [his ex-wife], once the caller confirmed he was speaking to Mark Guthrie, he explained he was calling about a loan balance that appears to be the full amount of the loan. We must construe the evidence in the light most favorable to Guthrie. And when we do that, a reasonable jury could conclude that PHH was attempting to collect a debt in a manner that violates [North Carolina law] by misrepresenting its right to collect the debt from Guthrie.

*Id.*

So, while it is accurate that *Guthrie* found a genuine issue of material fact on a debt collection claim, that dispute of material fact arose from telephone calls, not any written correspondence. We never examined the written disclaimer language the plaintiff received. Equally informative, in concluding that the phone calls might have violated North Carolina law, we emphasized that the phone calls did not contain any disclaimer language. As should be clear, our holding in *Guthrie* rested on telephone calls that contained no disclaimer language -- the written communications that had disclaimers never factored into the analysis. So *Guthrie*, like *Alexander*, is inapplicable to the case at hand.

b.

Payoff Statements

The district court also held that neither payoff statement, which were each sent at Appellant's request, was debt collection activity. We agree for two reasons. First, each payoff statement contained disclaimers materially identical to those found in the monthly statements. J.A. 514–15 ("[I]f you are currently in bankruptcy, or if you have been granted a bankruptcy discharge, this is not an attempt to collect a debt from you, nor is it an attempt to impose personal liability on you for your debt."); *id.* at 529 ("To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation."). As demonstrated above, those disclaimers clearly and unequivocally swore off any intent to collect a debt and effectively explained that the payoff figures therein were purely informational.

20

Second, and equally important, Appellant requested the payoff statements. Appellees did not send them unsolicited, hoping to coerce a payment out of Appellant. *Appellant asked for them, and he now seeks to fault Appellees for responding to his request.* Because Appellees did no more than oblige Appellant's request for information about his mortgage, we agree with the district court and hold that the payoffs statements "were not sent for the 'animating purpose' of obtaining payment." *Lovegrove*, 666 F. App'x at 312 n.5 (quoting *In re Dubois*, 834 F.3d at 527); *see also Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (finding "decisive" that outstanding balance statements were sent to a debtor "only after [the debtor] called and asked for them" and that "[t]he statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely").

c.

## 1098 Tax Forms

That leaves the 1098 tax documents. The 1098 tax forms were just that: tax forms. They contained information necessary for Appellant to complete his taxes. They did not demand payment, nor did they even suggest a way for Appellant to make a payment. Therefore, the district court correctly concluded that the 1098 tax forms were not related to debt collection activity.

\*    \*    \*

Because Appellant has failed to identify any communication that was made for the purpose of collecting a debt, he has failed to establish the first element of his FDCPA claim. *Boosahda*, 462 F. App'x at 333 n.3 ("To establish a FDCPA claim, a plaintiff must prove

21

that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." (internal quotation marks and citation omitted)).    Thus, the district court properly granted summary judgment to Appellees on this count.

## B.

## Stay Violation Claim

A debtor's filing of a Chapter 13 bankruptcy petition triggers an automatic stay of all collection activity.  11 U.S.C. § 362(a).  Should a creditor willfully ignore that stay and keep hounding the debtor for payment, the debtor can recover actual damages flowing from that prohibited conduct.  11 U.S.C. § 362(k).  To establish a stay violation, the debtor "must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (emphasis omitted).

On appeal, Appellant alleges that Appellees violated the stay by sending him the monthly statements, payoff statements, and tax forms.  But, as detailed above, those documents were not debt collection efforts.  They were purely informational in nature. And because documents that are purely informational in nature do not violate the automatic stay, *see In re Duke*, 79 F.3d 43, 46 (7th Cir. 1996), we hold that the district court properly granted Appellees summary judgment on Count II.

22

C.

State Law Claims

That leaves Appellant's state law claims.  Given that the district court declined to exercise supplemental jurisdiction over Appellant's state law claims, those claims can be reinstated if, but only if, we were to reverse on Count II or Count III.  We do not reverse those claims.  Therefore, we affirm the district court's dismissal of Appellant's state law claims.

IV.

For these reasons, we affirm the district court's rulings.

*AFFIRMED*